UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK B. BONFIGLIO, and
EUGENE K. STEINACKER,

    Plaintiffs,

v.                                                                                    Case No. 09-13534

MICHIGAN UNDERGROUND                                 HONORABLE AVERN COHN
SPECIALISTS, a Michigan limited liability
company d/b/a DITCH WITCH SALES OF
MICHIGAN,

    Defendant.

_____/

# MEMORANDUM AND ORDER
# DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

This is an age discrimination case. Plaintiffs Patrick Bonfiglio ("Bonfiglio") and Eugene Steinacker ("Steinacker") are suing their former employer, defendant Michigan Underground Specialists, Inc. d/b/a Ditch Witch Sales of Michigan ("Ditch Witch") claiming they were terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202 et seq. Before the Court is Ditch Witch's motion for summary judgment on the grounds that (1) plaintiffs have not made out a prima facie case of age discrimination and/or (2) plaintiffs have not shown pretext. For the reasons that follow, the motion is DENIED.

## II. Background

The material facts as gleaned from the parties' papers follow.[1]

Ditch Witch is a distributor of trench equipment and both sells and services the equipment at its location in Brighton, Michigan. Ditch Witch was independently owned until 2007 when it was sold to Michigan Underground Specialists, LLC who continued to do business under the Ditch Witch name. At the time of ownership change, a new service manger, James Patterson, and a general manager, Carl Rogers ("Rogers"), were hired. Rogers was the decision maker in terminating both plaintiffs' employment.

### A. Bonfiglio's Employment

Bonfiglio began working for Ditch Witch in 1985 as a service technician. He worked there intermittently, either as a result of being laid off because of slow downs in work or taking medical leaves. His last period of employment began in July of 2007, when he was called back from a lay off in December of 2006. He was called back to work as a service technician. At that time, Ditch Witch had four service technicians, including Bonfiglio and Steinacker. In November of 2007, Ditch Witch decided to create a full time truck driver position because it began offering a customer pick up and delivery option. Bonfiglio accepted the truck driver position. Eventually, he spent 95% of his time driving the truck and his service technician work was absorbed by the three

---

[1]Neither party followed the Court's motion practice guidelines for a motion for summary judgment. Particularly, Ditch Witch did not file a statement of material facts not in dispute in separately numbered paragraphs. As a result, plaintiffs did not file a response or counter-statement of disputed facts nor did the parties submit a joint statement. Neither party highlighted their exhibits, some of which consisted of entire deposition transcripts in mini-script form. All of this made wading through the record far more difficult.

remaining technicians.

In the fall of 2008, while Bonfiglio was on medical leave, Ditch Witch hired another driver, Bill Stevens ("Stevens"), as a temporary replacement. Stevens' age is not known but it appears undisputed that he was younger than Bonfiglio. Stevens, according to Ditch Witch "worked out very well" and Rogers believed "he had found a replacement" for Bonfiglio in the truck driving position." (Ditch Witch's brief at p. 9). Rogers then made the decision to terminate Bonfiglio and replace him "with a more efficient worker" - Stevens. Bonfiglio was terminated as of February 2, 2009. He was 52 years old at the time of his termination.

On February 9, 2009, Stevens assumed Bonfiglio's position as a truck driver. His tenure at Ditch Witch, however, lasted less than two months when he was terminated for abusing company equipment and not keeping the trucks clean.

In March of 2009, Ditch Witch then hired Donald Patterson, age 36, as Stevens' replacement. Donald Patterson continues to work for Ditch Witch as a truck driver.

B. Steinacker's Employment

Steinacker began working for Ditch Witch in 1971 as a service technician. By late 2008, Ditch Witch's business slowed down due to the lag in the construction industry. Rogers made the decision to effect pay and personnel cuts. These included the following:

> Cutting his own salary (Rogers was age 55 at the time)
> Cutting controller Sheila MacIntyre's salary (age 53)
> Cutting James Patterson's salary and adding higher commission (age 31)
> Cutting parts manager Tom Hubbard's salary (age 49)
> Cutting salesman Greg Smother's salary (age 41)
> Terminating salesman, Art Schulte (age 61)

3

By the beginning of 2009, Rogers believed further cuts were necessary. In January 2009, he decided that a service technician position needed to be eliminated. He chose Steinacker who was 71 years old at the time of his termination on February 31, 2009.

In June of 2009, Rogers hired another individual, Charles Underwood ("Underwood"), age 23. Underwood assumed service technician and management responsibilities under Patterson. Underwood continues to work for Ditch Witch.

### C. Events Since Plaintiffs' Termination

Following plaintiffs' termination, Ditch Witch, through Rogers, effected more cuts. These included releasing the parts manager, whose duties were absorbed by the service manager (James Patterson) and eliminating one of the four sales positions.

### III. Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on an issue as to which it bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could

4

find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir.1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. Pack v. Damon Corp., 434 F.3d 810, 813 (6th Cir.2006). However, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, all affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." Pack, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

### IV. Analysis

The ADEA provides that it is unlawful for an employer or agent of the employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Likewise, the ELCRA makes it unlawful for an employer to "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age." Mich. Comp. Laws § 37.2202(1)(a). ELCRA claims are analyzed under the same standard as federal ADEA claims. See Blair v. Henry

5

Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007).

A plaintiff can establish a claim for unlawful discrimination under the ADEA by producing either direct evidence or circumstantial evidence of age discrimination. Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009) (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc )). Circumstantial evidence is evidence that "allows a fact finder to draw a reasonable inference that discrimination occurred." Id. The Supreme Court recently announced that under either method of proof in an ADEA case, the burden of persuasion remains on the plaintiff at all times to show that "age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Financial Services, Inc., --- U.S. ----, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009).

### A. Bonfiglio

#### 1.

Bonfiglio does not appear to allege or offer direct evidence of discrimination. Where only circumstantial evidence is presented, the Court analyzes age discrimination claims under the familiar McDonnell Douglas burden-shifting framework. Geiger, 579 F.3d at 622; see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Following the Supreme Court's decision in Gross, which cast some doubt on the applicability of this evidentiary test to ADEA circumstantial evidence claims, the Sixth Circuit reaffirmed that the McDonnell Douglas framework remains applicable and useful. Geiger, 579

6

F.3d at 622 (citing Martin, 548 F.3d at 410). Thus, to establish an unlawful age discrimination claim using circumstantial evidence in this circuit, a plaintiff must first show that: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position, and (4) he was replaced by a younger person. See, e.g., Tuttle v. Metropolitan Gov't., 474 F.3d 307, 317 (6th Cir. 2007).

Ditch Witch says that Bonfiglio was terminated as part of a reduction in force. In cases involving a reduction in workforce, the Sixth Circuit modifies the fourth prong of a prima facie claim to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Blair, 505 F.3d at 529 (quoting Rowan v. Lockheed Martin Energy Sys., 360 F.3d 544, 547 (6th Cir. 2004)).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. Turtle, 474 F.3d at 317. If the defendant then articulates such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. Id.

2.

Bonfiglio denies that his termination was due to a reduction in force, citing the fact that Ditch Witch admitted it replaced him with Stevens, who it says was more "efficient," and then with Donald Patterson. The Court agrees.

A reduction-in-force occurs when "business considerations cause an employer to eliminate one or more positions within the company." Geiger, 579 F.3d at 622 (quoting

7

Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir. 1990)). The Sixth Circuit has explained:

> An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Barnes, 896 F.2d at 1465.

Although Ditch Witch was undergoing a general downsizing, Bonfiglio's position was not eliminated; it was filled by a new hire. Thus, the Court will not analyze Bonfiglio's prima facie case within the confines of a work force reduction.

As to Bonfiglio's prima facie case, the record is clear that Bonfiglio was a member of a protected class (being age 52 at his termination) and suffered an adverse employment action (termination). While Ditch Witch says Stevens was more efficient, it does not argue that Bonfiglio was not qualified for his position and the record is undisputed that he was not terminated for poor performance. As to whether he meets the final element of being replaced by a younger worker, clearly he was. Although the record is silent as to Stevens' age, it can be inferred that Stevens was younger than Bonfiglio. Moreover, Donald Patterson, who was hired after Stevens, was younger than Bonfiglio. Thus, Bonfiglio has made out a prima facie case. Ditch Witch is not entitled to summary judgment on this ground.

Ditch Witch also argues that Bonfiglio's claim fails because he cannot show pretext. Whether Bonfiglio must meet this burden assumes that Ditch Witch articulated a non-discriminatory reason for his termination. That is questionable. As explained

8

above, Bonfiglio's termination cannot be viewed as a reduction in force since he was replaced. Thus, Ditch Witch's articulated reason for terminating Bonfiglio-workforce reduction-is suspect. Ditch Witch offers no other reasons other than the statement that Stevens was more efficient. However, for purposes of this motion, the Court will assume that Ditch Witch has met its burden.

Accordingly, the burden of production shifts back to Bonfiglio to show by a preponderance of the evidence that the proffered explanation was a pretext for intentional age discrimination. As noted above, he retains the ultimate burden of persuasion to show that "that age was the 'but-for' cause of [her] employer's adverse action." Geiger, 579 F.3d at 620. The determination of whether the reasons proffered by an employer are pretextual requires a heightened examination of "the specific proofs and rebuttals of discriminatory motivation the parties have introduced." Carter v. University of Toledo, 349 F.3d 269, 274 (6th Cir.2003) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). A plaintiff can establish pretext by showing that the stated reason either: (1) was false or had no basis in fact; (2) did not actually motivate the employer's decision; or (3) was insufficient to motivate the employer's decision. Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir.2003). The reasonableness of an employer's decision "may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Id. (citing Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into "whether the employer made a reasonably informed and considered decision before taking an

9

adverse employment action")). Finally, the employer's proffered reason "cannot be proved to be a pretext 'unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason.' " Harris v. Metro. Gov't of Nashville and Davidson County, 594 F.3d 476, 486 (6th Cir. 2010) (quoting St. Mary's Honor Ctr., 509 U.S. at 515)).

Here, Bonfiglio has evidence that the proffered reason - reduction in force - had no basis in fact because he was admittedly replaced in his position. Even assuming there was a workforce reduction, there is also evidence tending to indicate that reduction did not actually motivate Ditch Witch's decision. In looking at the whole of Ditch Witch's reduction efforts, its oldest employees were terminated. This began with the termination of sales employee Art Schulte, age 61. Moreover, with respect to cost-cutting, James Patterson admitted at deposition that the new truck driver, Donald Patterson,[2] was being paid more than Bonfiglio. Taken together, the record creates a "reasonable inference" of age discrimination. Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 269 (6th Cir. 2010). Viewing the record in a light most favorable to Bonfiglio, there is a genuine issue of material fact as to whether his age was the "but for" cause of her termination. Gross, ---U.S. ----, ----, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009). Accordingly, Ditch Witch is not entitled to summary judgment on this ground.

## B. Steinacker

Steinacker contends that there is direct evidence of discrimination, relying on

---

[2]It is not known whether James Patterson and Donald Patterson are in any way related. For clarity, the Court refers to them using their full names.

Steinacker's deposition testimony in which he stated he was told by James Patterson, the service manager, that he was not given the truck driver position because he did not want an "old man" driving the truck. Steinacker also testified that Patterson asked him when he was going to retire. This is not direct evidence that Steinacker was <u>terminated</u> because of his age. Steinacker's age discrimination claim is based on his termination, not on the failure to give him the truck driver position, which was given to Bonfiglio. Thus, if Steinacker is to survive summary judgment, he must do so within the confines of providing circumstantial evidence of discrimination.

Again, Ditch Witch argues that Steinacker's termination occurred as a result of a reduction-in-force. Unlike Bonfiglio, Steinacker position was not immediately filled. However, the record shows that in June of 2009, about six months after he was terminated, Ditch Witch hired another individual, Underwood, who performed service technician and other duties. This could be viewed as a replacement. The Sixth Circuit has held that when an employer fundamentally changes the nature of the employment to enable a person to assume the plaintiff's duties in addition to his or her own-for example, promoting a part-time employee to a full-time position-this constitutes a replacement. <u>Tinker v. Sears, Roebuck & Co.</u>, 127 F.3d 519, (6th Cir. 1997). While Underwood was not hired until six months later, whether he was a replacement is a question of fact. As such, it is not clear whether Steinacker must meet the additional burden in a work force reduction case.

Assuming that Steinacker's position was eliminated as part of a reduction in force, he must provide "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible

11

reasons." Geiger, 579 F.3d at 622. This heightened evidentiary standard is required because "the most common legitimate reason for the discharge of a plaintiff in a [reduction in force] situation is the work force reduction." Id. (modification in original). Such evidence must be "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." Id.; see also Barnes, 896 F.2d at 1465; Blair, 505 F.3d at 529 (finding "such evidence might constitute a circumstance, among others, giving rise to an inference of age discrimination, even if this evidence is not sufficient to show that the plaintiff was 'replaced,' as Barnes defines the term"). A plaintiff could make this additional showing by, for example, proffering evidence "that he or she possessed qualifications superior to those of a younger coworker working in the same position as the plaintiff." Barnes, 896 F.2d at 1466. "Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive." Id. Ultimately, however, the "mere fact that a younger employee ... receives better treatment than an older one is insufficient to carry the burden of proof in a case under the federal Age Discrimination in Employment Act." Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 267 (6th Cir. 2010) (quoting Dabrowski v. Warner-Lambert Co., 815 F.2d 1076, 1078-79 (6th Cir.1987)); but see Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir.1998) (holding that where plaintiff proffered evidence that, unlike younger employees in his department whose positions were eliminated, he was not offered the opportunity to transfer to other positions within the company, plaintiff had demonstrated prima facie case of age discrimination).

      Here, Steinacker relies on Bonfiglio's testimony that James Patterson told him

that the only reason Steinacker did not get the truck driving job and Bonfiglio did was because he did not want an "old man" driving the truck. He also points to James Patterson asking him when he was going to retire. While Ditch Witch says James Patterson asked him that way before he was terminated, it can still be evidence of sufficient at make out a prima facie case in a work-force-reduction.

As to pretext, the same evidence set forth above applies. Moreover, both plaintiffs testified at deposition to hearing rumors that Ditch Witch was interviewing in December of 2008 or January of 2009 which cuts against a finding that there was a reduction in force.

Overall, Steinacker, like Bonfiglio, has set forth sufficient evidence to make out a prima facie case and establish pretext to defeat Ditch Witch's motion for summary judgment.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: August 12, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 12, 2010, by electronic and/or ordinary mail.

    S/Deborah R. Tofil
Relief Case Manager, (313) 234-5160